The next case this morning is number 519-0410, First Financial Investment Fund v. Johnson. Arguing for the appellant, First Financial Investment Fund, is Adam Vaught. Arguing for the appellee, Teresa Johnson, is David Cates. Each side will have up to 20 minutes for their argument. The appellant will also have 5 minutes for rebuttal. You'll see the digital timekeeping device on my screen. When time has expired, I will hit the gavel. Please remember, no photographs, and only the clerk of the court is permitted to record these proceedings today. Counselor, the appellant is ready to proceed. Thank you, Your Honor. Good morning, and may it please the court. Adam Vaught on behalf of First Financial Investment Fund III. This is admittedly probably one of the strangest appeals brought under the Citizen Participation Act this court has seen. But that's because what has gone below in the circuit court is some of the strangest judicial abuse that I have ever seen. The central issue on appeal is what happened on June 2015 when Teresa A. Johnson was served with a summons in this case. Under her theory that day, she became a defendant in this lawsuit that entitled her to file the various counterclaims that she has filed since. However, under the law, Teresa A. Johnson was simply served with a summons for Teresa N. Johnson. The effect of that service was that neither Teresa was properly served as a defendant. The court therefore lacked jurisdiction over either of them. And as a result, the acts of Teresa A. Johnson since have been meritless and retaliatory acts against First Financial, making them a strategic lawsuit against public participation. The Citizen Participation Act protects against slacks. The act initially was passed following the 1990s when scholars had referred to strategic lawsuits against participation. The Supreme Court in the Sandholm case recognized that the paradigm slap is acts against by developers against citizens who object to various developments and the developers therefore file lawsuits against them to silence them. So while traditionally it's been argued that slaps are really in the electoral process with a candidate filing against another candidate committee for defamation, the traditional slap was actually outside electoral context. So the first prong of the CPA is determined whether or not that the acts, and I will refer to for this analysis, First Financial as defendant, even though we obviously disagree with that. The first prong is for the defendants to demonstrate that their acts are protected by the act. Under the Citizen Participation Act must show that the furtherance of a rights petition or to participate in government has been infringed. The Seventh Circuit has held that the First Amendment provides people the rights to file lawsuits because the filing of a lawsuit is in fact petitioning the government for some sort of judicial order which would then provide them with the relief they seek. The act defines the government to include any branch, state or federal, that of course includes the judiciary. So therefore a filing of a lawsuit is protected activity. The next question though then becomes you have to establish the second prong which is that the acts are solely based on the defendant's furtherance of seeking relief from the government. The Supreme Court and then the appellate courts that have interpreted actually have two steps you have to prove under this prong which is first establish that the claim brought by the opposing party is meritless and then second that it is also retaliatory. Under the meritless analysis the claims by Teresa A. Johnson are we have argued for years that they are meritless. You know a history of it is important. Initially in June of 2015 Teresa A. Johnson was served with a summons that said the first financial versus Teresa Johnson. That very day she called the number on the summons and received a person from Schiller Law who said that they were not attorney. This was an attempt to collect the debt. The call was reported and transcribed. Teresa A. Johnson gave her name, asked what this was about. The person on the phone asked for information including her full name, her social security number, her date of birth. And that person told her that she was not the person that was intended to receive it. That in fact Teresa A. Johnson who was 21 years younger who had a different social security number was the person that was attempting to be served. She was told that she could disregard it and that there was no further thing she needed to do. Despite that two weeks later she files an answer in a counterclaim seeking damages and asserting herself as a class representative. The first step that First Financial then did was to try and quash service to say that was not the right person. The court granted it but then Teresa A. Johnson filed a motion to reconsider which somehow was granted, therefore trying to make herself a defendant. Despite this, First Financial then dismissed the claim against Teresa Johnson, voluntarily dismissed it. Despite that, Teresa Johnson then objected to a motion to try and realign the parties to make her a plaintiff. The effect of that was Teresa A. Johnson brought a claim under the Fair Debt Collecting Practices Act which would allow it to be removed to federal court if First Financial was the defendant. Then a trial was set a few years later and despite discovery with many sanctions motions, plaintiffs then moved and changed the trial date. After the trial date was changed, they then amended the complaints to add a new count that would enjoin First Financial and related entities for filing any lawsuit in the state of Illinois against anybody. At no time was Teresa Johnson ever a defendant and therefore all those counterclaims lack any jurisdiction to be brought because she simply wasn't given jurisdiction in the initial place. Years ago, the Reisman Court actually had a similar analysis. In that case, Charles C. Wright had been served in Oak Park. The complaint alleged that Charles C. Wright was a shareholder to a bank that had been dissolved in Chicago. Five years afterwards, a default judgment had been entered, a consent decree had been entered and the plaintiff who was the receiver of the bank realized that the wrong Charles C. Wright had been served. Instead, the shareholder actually lived in Chicago. So, Alias Summons was served and Charles C. Wright in Oak Park and the receiver entered into an agreement to remove him from the consent decree. Charles C. Wright in Oak Park then alleged that in fact that Charles C. Wright, who was not the shareholder, had to be the defendant anyways because he had been served. A judgment had been entered against him and there's no other way that he, Charles C. Wright, the shareholder, can now be considered the defendant. The appellate court said the arguments were ingenious, but said they lacked any merit. The court said that the only defendant was Charles C. Wright, who was the shareholder. The mere fact that somebody with the same name had been served did not change that simple fact. And therefore, the only person who was ever named as a defendant was Charles C. Wright, the shareholder, not Charles C. Wright in Oak Park. And therefore, the service could be entered against him and then they remanded it back for him to defend any claims that he may have. Plaintiff in their brief has argued that the correct course here was that the first financial thought that the wrong Teresa Johnson was served to say it was a mistaken identity. Well, the wrong Teresa Johnson was not sued. Teresa A. Johnson was not sued. In fact, it was Teresa N. Johnson. But mistaken identity also demonstrates that Teresa A. Johnson's fatal flaw here. Under mistaken identity, the court does not get jurisdiction over the person who was served. In the Capital One case that we cited out of the third district, Joseph Sakala was served for a debt DVA sealant foods. He was the president of his company. And in that case, he appeared once in court, said that his company was in bankruptcy. Never heard anything about it. But despite that, a default judgment was entered against him. Five years later, Capital One sought to garnish wages against Joseph Sakala. He then filed a 214-01 petition saying that he had never received notice of the default judgment. And the first notice he ever received was when the company tried to garnish his wages with his new employer. On appeal, the third district found that the default judgment was void ab initio because they had never had service on Joseph Sakala. Instead, the complaint had been against Joseph Sakala DVA sealant foods. And as a result, the court never got jurisdiction over Joseph Sakala individually. And therefore could not enter the judgment and therefore could not garnish the wages. That is the similar situation that has happened here. Plaintiffs in a brief argued that if they had to show up in court that a default judgment would have entered against Teresa Johnson, then that we would have pursued to garnish her wages. The problem, however, is Teresa N. Johnson never received service. And so we wanted to have jurisdiction over her. And under 214-01, she would have been able to vacate any default judgment. And Teresa A. Johnson was not the party name. Therefore, she never would have been served and she was never had jurisdiction over her as well. Let me stop you for one second. With regard to the actual complaint, you say that Teresa A. was never the one served or never the one sued. But we all agree that she was served. And I think Mr. Cates in his brief suggests that it was not the sheriff who mistakenly went to Teresa A.'s residence, but it was whoever prepared the complaint and the summons had Teresa A.'s address on there. Now, I understand that in your complaint, you know, in your brief, you indicate that when she called in, the attorneys for First Financial identified her as the wrong party because of Social Security number, birth date, and things of that nature. If you all named Teresa A. because no one put in the middle initial, the complaint, I am assuming, did not have birth date or anything on it. Then you put in Teresa A.'s, and I say you, someone for First Financial drafted the complaint and put in Teresa A.'s name without the middle initial designation. And her actual address, how do you argue that she was not the intended person who was served and sued, even though later we determined that, you know, there's wrong person? Well, Your Honor, that goes to what would have been the discovery in the case. And that gets into the mistaken identity analysis. And so if Teresa A. Johnson had been sued, if she had not called that day, didn't know that it wasn't intended for her, and appeared in court, and then discovery was brought, and then the discovery was given that it was not her Social Security number, it was not her birth date, then it would be the duty of First Financial to say to the court that we've got the wrong person here. We need to have alias summons to then serve the proper person. But in no time will there have been jurisdiction over her because she was the misnamed party. And as the Third Circuit, the Third District has said, a mistaken identity, the court does not get personal jurisdiction over the person who is mistakenly named. And so, I mean, I guess, you know, to go further, if Teresa A. Johnson was Teresa A. Smith, you know, we wouldn't be here. It's just this, you know, strange circumstance that the person who was served has the first and last name, the same as the person who was the named defendant. And, you know, as we point out in our brief, the Illinois Code of Civil Procedure provides for service either a person personally or at their abode by person over, you know, an aging majority. And if you serve, if Bob Smith Sr. is sued, and Bob Smith Jr. accepts the service at his father's house, service is complete on Bob Smith Sr. But that doesn't make Bob Smith Jr. a defendant simply because he was given papers by his name. I understand that argument, but that also implies that service was rendered to the right address for Sr. Jr. happened to be there. This is, you all are naming the wrong person and their wrong address for that person. Sure. Well, if you name Bob Smith Sr. and you serve Bob Smith Jr. at a residence of his own that is not his father's, that doesn't make Bob Smith Jr. the defendant either. It just means that the court has jurisdiction over neither Bob Smith Jr. nor Bob Smith Sr. because Bob Smith Sr. wasn't properly served at home. And that is, in essence, the problem with this case is that simply because both Teresas have the same first and last name, it seems as though it's confusing about who is the intended defendant, but that's where the discovery comes through. That's where the Social Security numbers, the birth dates, that will establish who the proper person is. I mean, the law should not enable that, you know, service is very clear unless somebody has the same first and last name, and then it gets very murky, which allows people to file counterclaims and, you know, haul somebody to court over a mistake in the proper service. If you had the proper name and the mill initial and birth date, why didn't you have the proper name with the mill initial on the summons? That's not in your record. The record, honestly, I don't know how that happened. You know, I imagine somebody, I'm guessing, completely guessing here, but you Google Teresa Johnson and that's who you get, and that was the address that was served. But, I mean, there are instances, you know, very often where, you know, somebody has an improper address or they get the wrong person and, you know, service isn't proper and alias service has to be issued. And so I think what, you know, Teresa A. Johnson would try to be, would do is that for service, everything has to be absolutely perfect. Elsewise, you know, you've either sued the wrong person or you're not allowed to sue the intended person. And I don't think that's what the law requires. The law requires service and summons so that you execute jurisdiction over a person properly. If somebody gets the wrong address, that doesn't mean the person who received the summons is now sued. It means that the intended person hasn't properly been served. But you have the information and don't use it. Does that just sloppy work? Is that what it is? Your Honor, I just don't know one way or the other. It is not in the record. So under the second problem, the second analysis is whether the act is retaliatory. And in this case, for four years, the first financial has been defending counterclaims against somebody they never sued. And the day the service was received, Teresa A. Johnson was told that it was not intended to be served upon her, that a different Teresa Johnson was the defendant in the lawsuit. And instead they have faced discovery, sanctions, a trial was set. Now there's an amended complaint that seeks to enjoin first financial from filing any lawsuit in the state of Illinois anywhere against anyone. The only purpose of this is to retaliate against first financial for having served Teresa A. Johnson. And all along the way, first financial tried to clean up any mistake that may have been made or any inconvenience to Ms. Johnson by, one, telling her that wasn't it, two, trying to quash service, three, voluntarily dismissing the claim. Every step along the way, Teresa A. Johnson has fought trying to be removed from the lawsuit. So, you know, under the citizen participation analysis, the third prong then shifts to the plaintiff, and that's for her to make an argument that first financial wasn't trying to seek relief from the government, which means it wasn't actually trying to recover its debt from Teresa A. Johnson. And they've made no argument to that case. They did not file an argument that we did not intend to do so in the brief. And so anything that they would say now would be waived. But it's clear all along that first financial is trying to receive its debt from Teresa N. Johnson, which is why on the very day that Teresa A. called in, they said, no, I'm sorry, that's not you. And then we'll get, you know, they're going to get the right person. So under the three prongs, first, is it protected act? Yes, it is. Second, is it solely related to first financial's acts? Yes, it's both meritless and retaliatory. And under the third prong, Teresa A. has not established by clearing convincing evidence that we were not trying to recover our debt from Teresa N. And so unless, you know, the court has any more questions, I would just ask that the report reverse and remain dismissed with prejudice, and I would reserve anything for rebuttal. You did suggest at the beginning of your presentation that this is somewhat unique to be bringing the action under the Citizen Protection Act. Have there been any other cases that are similar to this in any way that apply that act to this type of an action? Not that I have found, Your Honor. But admittedly, like the only case I found that was similar to this was the Reisman case in the 1940s, which was well before the Citizen Participation Act had been adopted. No further questions here. Counsel, thank you. And we're going to happily proceed. And, Your Honor, thank you. Are you guys ready for me to proceed? Yes, go ahead. Thank you, judges. And thank you for having me today. And thank you for setting this up via Zoom. And may it please the court. Your Honors, I think that you've asked some very pointed and very good questions. Justice Barberis and Justice Welch, and I'm going to address those because I think they underpin why the slap motion is inappropriate. But I think it's important to understand a little bit of the background of this case. And that is First Financial is a debt collector, Justice Moore and Justice Barberis. I don't know if it's just luck, but you've been with me on a couple of these cases that we've had in the appellate courts. So I hope I don't bore you with the recitation again. But these cases are about debt collectors who buy tranches of debt from other parties that come with limited information. And if you look in this case at supporting record 199, that is the asset purchase agreement that under which First Financial claims it bought the debt that includes Teresa Johnson, whoever this person may be. And in section 2.3 of that asset purchase agreement on page 199 of the supporting record, it specifically states that the seller of the tranches of debt disclaims all warranties related to enforceability, collectability, or documentation related to these debts. So we're starting off with a situation where First Financial is buying debts that are specifically disclaimed any warranties related to whether or not they are collectible, whether there's documentation showing who owns it, or whether the alleged debt is even enforceable. So First Financial knows when they buy it, that there may be problems. And as part of this tranche of debt, one of the people allegedly in there is a Teresa Johnson. And on June 5, 2015, First Financial sued Teresa Johnson. What we don't know at this point and what's not in the record is what information First Financial had other than social security number or potentially date of birth. But what we do know, and just as Barbara, as you pointed out, at supporting record 54, we have the complaint that was filed in this case. It's four paragraphs. And the caption states Teresa Johnson, doesn't state Teresa A. Johnson, doesn't state Teresa N. Johnson. There's no birth date. There's no social security number. There's not even a name of the credit card company who was supposed to be this debt belonged to that was sold to First Financial. In fact, the first paragraph says that the debt is related to a credit card agreement or a line of credit agreement. We don't even know what the alleged debt is. All we know is that First Financial filed a lawsuit named Teresa Johnson and pled four paragraphs, one sentence apiece, saying that that Teresa Johnson owed $7,500. The only other piece of evidence we have related to the complaint is the summons, which is found supporting record 57. And I think as Justice Barbara and Justice Welch both pointed out, the only information on there is, again, the caption that names Teresa Johnson. And then it has our Teresa Johnson's address. She was served with that and it was prepared by the plaintiff, which is First Financial. There's no attachments to the complaint or anything else, such as an affidavit stating who it is. There's no credit card application. There's no bill of sale or purchase agreement. There's no identifying information that ostensibly was in the possession of First Financial at the time they filed the lawsuit, stating which Teresa Johnson they're actually suing or identifying that person or pointing out that they actually own the debt, which is required by various Illinois statutes. Mr. Case, let me ask you, with regard to those documents that you say that the complaint was lacking, while we all understand how that could have been beneficial, are any of those required to be filed with a complaint or is the complaint fatally flawed for lack of having those attached? So, Your Honor, two points to that. Yes, under Illinois civil procedure, if you're suing under a contract, you have to attach the contract. So, in this case, that would have required the credit card agreement or some other similar document showing that there was a contract that's been breached. Secondarily, under the Illinois Collection Agency Act and appellate court decisions interpreting the same, it's required that you attach the bill of sale and chain of title documents back to the original creditor, showing how the debt moved, the alleged debt moved from the original creditor to First Financial. All those documents are required either statutorily or through case law interpreting the statutes to be attached to the complaint, and none of them were, which underpins the claims in our counterclaim. So, Your Honor, and again, that dovetails with why we filed the counterclaim on July 7, 2015, over five years ago, because those documents were not attached, and the counterclaim was filed basically alleging statutory violations of the Illinois Collection Agency Act, the Illinois Consumer Fraud Act, the Fair Debt Collection Practices Act, and then some common law claims in there as well. What we do know, and as First Financial's counsel indicated to the court, on March 15, 2016, they filed a motion to dismiss their complaint against Teresa Johnson without prejudice, so I guess they could bring it against her again. And they also filed a motion to realign the parties, and that's supporting Record 106. But in that motion to realign the parties, they admit in the pleading to the circuit court, they sued Teresa Johnson, who filed the counterclaim. They admit that she was a defendant in the underlying lawsuit, and they also affirmatively state that they want her to be plaintiff. Now, obviously, as First Financial admitted, the reason they wanted to do that is because they wanted to go to federal court. They didn't want to be in St. Croix County, where they filed the lawsuit, because the Supreme Court said, as a counterdefendant, you can't remove the claim, but as the defendant, you can. So as this court's aware, your review of a CPA motion is de novo. This is the first point at which this court could stop and dismiss this appeal, because you have a party, First Financial, filing a pleading in circuit court stating that she is a party, and now they're arguing four years later to this court that she never was. So you have an estoppel problem there. Second, Your Honors, even if you didn't find estoppel, you could find a waiver argument, which we argued in the circuit court below. There's a case out of the Fourth District called Gully v. Noy. It's 316 ILAP 3861. It was a medical malpractice case where the defendant waited several years to bring up the fact that a certificate of merit had not been filed with the complaint. And the appellate court said you can't sit on defects for years and participate in litigation and then bring up an argument later, which is what they did here. Four years after the counterclaim is filed, they bring up a SLAPP argument, which was never raised previously. They participated in the litigation. They took my client's deposition. They issued discovery. So for all those reasons, First Financial could be found to have waived this argument. But even if the court disregards all of those things and we get to the actual merits of whether or not the SLAPP applies, Justice Barberis, to your point, in our research, we have never found a case where a SLAPP was found because of a counterclaim that was filed. Ostensibly, a SLAPP violation would apply to affirmative defenses because we're interfering with their ability to collect judgments from clients if we try and defend ourselves, which is what we're doing here. There's no precedent in the legislative history of the CPA nor in case law interpreting it that a counterclaim could ever be a CPA violation. But even if the court decides that it can be, there's no SLAPP violation here based on what First Financial must plead and prove. First, as Appellant's counsel actually pointed out, they have to prove they were seeking a favorable government outcome. Well, if counsel is to be believed, they weren't trying to sue our client at all. So how can that be a favorable government outcome if they weren't trying to sue us in the first place? Second, there's been a lot of discussion, and I think Justice Barberis, you kind of hit the nail on the head as far as where was Teresa Johnson, my client, actually sued in this case? And, you know, the Appellant has argued in its briefing that this is not a case of mistaken identity. It's the wrong person that was served. And the Appellant has made the argument that there's a lack of jurisdiction, even if there is mistaken identity, which I don't necessarily think is the case, but I can address that in a second. I think what's important to note is Teresa Johnson was named in the complaint as Teresa Johnson, not Teresa A, not Teresa N. She was served, and she was worried about it enough that she contacted us, and we filed a counterclaim, which, as the justices know, must be taken as true at this point because this is a motion to dismiss. And our counterclaim can be found at Supporting Record 657 and going from there. And our allegations are that, again, they filed no affidavit. They filed no supporting documents as required by law. They violated Illinois law by claiming that someone owed a debt when they didn't. They didn't do any work to ensure that the person they were suing was the appropriate party. That's a violation of Illinois law. And First Financial, frankly, admits that because they admit they sued the wrong person. Let me stop you for just a second. On two different pages of appellant's brief, they suggest, and I'm assuming I'd like to know what your position is on this, page one of appellant's briefs, they claim this case, therefore, comes down to the question of whether Teresa A was merely served or actually sued. On page 11 of their brief, the appeal should be decided on the question of whether Teresa A was sued or simply served. So I don't know that they've agreed that they sued the wrong person. They have agreed that they have served the wrong person. Do you agree that that's what this case boils down to? Was she sued or was she served? No, Your Honor, I don't. I believe the case boils down to whether or not there's a violation of the Citizen Protection Act. And that must be proven by the appellant that they were seeking a favorable government outcome, that the claims are meritless and retaliatory. They can't prove all three of those things. I'm sorry. When I have a thought, I have to spit it out immediately. Otherwise, I'll lose it. So with regard to what you just said, that this comes down to whether or not there was a violation of that act. Does that act require that there be a lawsuit or that someone be served in order to bring that act into play? Your Honor, I don't think that the act itself goes that far. I think the only thing the act protects is politically protected activity that would chill a person's participation in government. Basically, it was the purpose of the act that you can't sue a political opponent was the reason for the act. But someone has to be sued in order for the act to come into play. Well, they're using it as a defensive shield and we have sued them, Your Honor. Our counterclaim is valid. And one of the reasons I think that getting hung up on a personal jurisdiction argument is kind of a misnomer. The Chicala case is arguing that the person wrongfully or mistaken identity, the court doesn't acquire personal jurisdiction over them. That's the one case that says that. I'm not sure it's correct because as an Illinois resident, Illinois courts have jurisdiction over Illinois residents, number one. But number two, when Teresa appeared and filed her counterclaim, the court had personal jurisdiction because she waived it. So the courts can acquire personal jurisdiction by various different mechanisms. And I think it's important when we're talking about sued or served, Your Honor, that this court has actually addressed a similar situation. And Justice Welch, you wrote the opinion. It's Cazador versus American Express Centurion Services Corp. It's a 2012 ILAP 5th 120110. And in that case, a man named Ron E. Cazador sued American Express and a law firm for debt collection violations based on a judgment they allegedly had obtained against him. And his argument was that I wasn't actually sued because I'm Ron E. Cazador. Who you meant to sue was my dad, Ron L. Cazador, because your garnishment has his Social Security number on it. And I don't live at the address where you served me. And Justice Welch wrote in analyzing this case as to whether the prior judgment could defeat the later debt collection lawsuit. The objective manifestations of plaintiff's intent are the best indications of the plaintiff's intent. So what we look at is the complaint and the surrounding documents to determine who the plaintiff intended to sue. The subjective intent of the plaintiff doesn't enter into it at all. And there's a case out of the 1st District, Clinton v. Avello, which is 105 ILAP 3rd 336. Where the appellate court stated, quote, the most probative evidence of whom a plaintiff intended to sue is the party named by the plaintiff in the complaint. If such a party in fact exists, but is not the real party in interest, a court can conclude that the plaintiff has mistakenly sued the wrong party, end quote. So I don't think there's any doubt based on Justice Welch's opinion and the 1st District's opinion that when you sue the wrong person, it doesn't mean you haven't sued them. It just means you need to correct your error and you've made an error. I think the Avello court goes further and states, quote, the plaintiff's rather subjective explanation of whom he intended to sue cannot prevail over a somewhat more obvious conclusion that he intended to sue the specific party whom he named in his complaint and who in fact exists. So, you know, in this case, your honor, all we have is the complaint that says Teresa Johnson and a summons that lists her as defendant with her address on it that she was served. There's no other objective rational conclusion other than that she was sued by First Financial. They would like the fact, they would like that not to be the case. They wish they hadn't, I'm sure. But the fact remains. Would it make any difference? Again, I'm sorry for interrupting, but I give you a reason for doing so. Would it make any difference if on the complaint itself, it simply listed Teresa Johnson and had her address, Teresa A's address on there mistakenly, albeit, but have the wrong address on the complaint? Does it make any difference that we don't find the wrong address except for on the summons? Well, your honor, I don't think, I think it's a distinction without a difference because based on this court's opinion in Cazador, what we have to look at is the objective evidence before the court at the time the lawsuit is filed. And, you know, to say that the summons is more probative than the complaint, I think is a distinction without a difference. The only evidence that we have, your honor, is that the complaint named Teresa Johnson and she was served with it. And based on this court's opinions and the appellate court opinions, that means she was sued inappropriately. So, you know, moving on, your honor, to, to, I see my time is running out, so I want to, I want to get to a couple, a couple of things. But to finish that point and to paraphrase Justice Welch, there's no objective evidence anywhere that my client wasn't the party who was intended to be sued. And if there is no objective evidence anywhere that she wasn't the proper party, then she was wrongfully sued. And we've taken measures to answer and defend her. And we have filed counterclaims based on the violation of law that basically were violated when they did sue her. And that dovetails, your honors, with why First Financial cannot prove that the underlying claims are meritless. And the case law is very clear that that is their burden. They have to prove that. They have to show that they, that we have no chance of success on the merits on any of our claims, and that's simply not true. We've illustrated how they violated statutes by not attaching appropriate documents. We've illustrated that they claim someone owes them a debt, which doesn't. That's fraud. We've illustrated, your honors, that they, that they violated the Federal Debt Collection Practices Act and the Illinois Collection Agency Act. But it goes farther than that, your honors. Our verified amended counterclaim, First Financial argues that we're trying to take away their right to sue. That's not what we're doing. Our verified amended counterclaim illustrates that First Financial hires a web of affiliated companies. And there's testimony from Thomas Brown, who testified at a hearing in St. Clair County. And he's in the supporting record, A1002. He testified that First Financial Investment Fund III, who is the only party to this appeal, has no employees. They don't do debt collection. What they do is they farm it out to their affiliates. And there's a company called First Financial Portfolio Services that handles all of that. First Financial Portfolio Services is a third-party defendant in our verified counterclaim. And the reason they are is because First Financial Portfolio Services is not licensed as a debt collector, nor are any of the other entities. The Illinois Collection Agency Act specifically states that to collect debt in this state, the legislature has made it a priority that if you're going to do that activity, you have to be licensed. And none of these entities that First Financial Investment Fund III employ are actually licensed. So there's a provision of the Illinois Collection Agency Act that authorizes... Let me stop you one more time. Doesn't the law of the case, didn't the court below find that First Financial III is a debt collector, collection agency, and debt buyer as defined by the Illinois Collection Agency Act? And is registered as such with the Illinois Department of Financial and Professional Regulation? And that was in the TRO order. Also, there was, I believe, to their reply brief, they show a printout from the state, Department of Financial and Professional Regulation, identifying First Financial is licensed in Illinois? Correct, Your Honor. And if you look at the motion for temporary restraining order and the injunction that was granted, it is not against First Financial Investment Fund III. We're not seeking to enjoin First Financial Investment Fund III's right to petition the courts for redress. Who isn't joined is First Financial Investment or First Financial Portfolio Services, who is not licensed, who does all the debt collection activity for First Financial Investment Fund III. That entity is the one against whom the restraining order was issued, specifically authorized by the Illinois State Legislature, which found that collecting debts without a license, which First Financial Investment Fund III's person that appeared in court to testify admitted that they do, that is an irreparable harm to the citizens of the state of Illinois and injunction should issue. So First Financial Portfolio Services is violating that law. We have not asked to enjoin First Financial Investment Fund III from filing losses. And I see my time is up. Unless there's any more questions, I'll stop my argument. Is First Financial Portfolio Fund, are they sued in this case? They are as part of the verified amended counterclaim. It's a weird procedural posture, Your Honor, because a amended counterclaim was filed. The motion to dismiss based on the CPA was filed. That was briefed and argued. And then after that was denied, the verified amended counterclaim was filed subsequent to that. Thank you, Counsel.  Thank you, Your Honor. First, counsel says that there's no objective evidence of who we intended to serve. I really, I don't know what a social security number and birthday can be other than objective evidence. You know, the arguments he made are very interesting. You know, after Teresa A. Johnson was served with summons and before she made her phone call. But other than that, they fall away because it was very clear that she was never named as a defendant. The actual defendant was Teresa N. Johnson, who was 21 years younger and who had a different social security number. I think the question is why she served. Teresa A. Johnson? Teresa N. Johnson. No, Teresa N. Johnson was not served. Teresa A. Johnson was served. The actual defendant. Go ahead. The debtor was not served. The person who has a counsel here today was served. But the effect of that was that there was jurisdiction on either of them because Teresa A. Johnson, who received the summons, doesn't become a defendant by virtue of simply being handed a piece of paper that has a name, a first and last name that's the same of her. That's what the Reisman case said. The Reisman case said simply because Charles C. Wright of Oak Park received a summons, that doesn't mean that the default judgment was against him. It just meant the service wasn't proper against the actual defendant. And everything that happens from there makes this claim meritless. The Sillicota Civil Procedure says that a defendant may file a counterclaim. But Teresa A. Johnson isn't a defendant. She's also filed third-party claims, but that is on the assumption that she is a defendant. You know, counsel says that there's an estoppel argument because whenever we move to realign the parties, we refer to her as a defendant. But first, this is after we tried to quash service, which they was branded and she filed a motion to reconsider. We voluntarily dismissed. Then they proceeded to object to that. But under estoppel, we would have had to prevail. It's obvious we did not prevail, so estoppel doesn't apply. But furthermore, they didn't raise that in the brief, and so that argument is forfeited. He then argues that because we waited four years to bring a slap action, that we've waived that. But first, under the Citizen Participation Act, you can raise that as an affirmative defense on a motion. So that means it could be brought under a summary judgment motion, which would certainly be brought years after the dismissal stage. But second of all, that was filed after they filed an amended complaint. And anytime you file an amended complaint, you have a right to then bring a motion to dismiss on that. Furthermore, the waiver argument wasn't raised, so it's forfeited. He also argues that the Citizen Participation Act doesn't apply to counterclaims, that there's no case law or statutory legislative intent to establish that. But that's simply not true because Section 11010 of the Citizen Participation Act defines judicial claims, and it says, quote, a claim includes any lawsuit, positive action claim, cross-claim, or counterclaim. Justice Barberis asked, does the Citizen Participation Act apply if there's not a lawsuit? I think that probably the answer would be no, it doesn't. But if there's no lawsuit, then that means that nothing that's going on below can proceed. Because if there's no suit against Theresa A. Johnson, then she can't be bringing her counterclaims. So either the act applies or it doesn't, but either way, First Financial has to prevail. Well, let me ask you this in terms of what you just spoke on. In your brief, the issue presented for review, you state as whether the Citizen Participation Act protects First Financial or any plaintiff from retaliatory counterclaim based upon incorrect service. And then, as I pointed out to your opponent, the two places in your brief, or in your reply brief, you suggest that what the case comes down to is whether she was served or whether she was sued. So is that still the position that you're taking with regard to, you know, yes, the issue, if we find that she was sued, then does the first protection of the Citizen Participation Act apply? But to get to that point, we have to determine whether she was sued or merely served? Well, Your Honor, I think that whether she was served or sued goes to the meritless argument of the Citizen Participation Act. Because if she was not sued, that means the counterclaim is by definition meritless because she can't bring it. So, you know, you can look at it from either way. You can look at it inside the act or outside the act. It depends on how the court wants to analyze it. But if you first analyze she was never sued, therefore everything else falls away, then, you know, I guess the Citizen Participation Act wouldn't apply. But if you look at it within the context, because certainly there is a judicial proceeding going on below, if, you know, if that counterclaim is meritless because she was never sued, then we prevail on the meritless law. I see I'm out of time, and so we would just ask that the court reverse and direct the trial court to dismiss under the Citizen Participation Act. Thank you. Thank you, counsel, for your presentation. The court will take the case under advisement and order will issue in due course. Your excuse.